UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTINE LACY,

       Plaintiff,

v.                          Case No. 8:14-cv-252-T-33TGW

CITY OF ST. PETERSBURG,
Florida, a municipal corporation;
WILLIAM FOSTER, Former Mayor; and
CHIEF OF POLICE CHUCK HARMON,

       Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants City of St. Petersburg, Florida; Former Mayor William Foster; and Former Chief of Police Chuck Harmon's Dispositive Motion to Dismiss (Doc. # 30), filed on May 7, 2014. Plaintiff Christine Lacy filed a response in opposition to the Motion on June 2, 2014. (Doc. # 41). For the reasons that follow, Count I is dismissed without prejudice as it is not ripe for this Court's review; Count II is dismissed with prejudice; and the remaining state law claims are remanded to state court.

**I.   Background**

Plaintiff initiated this action on January 27, 2014, in state court.[1] (Doc. # 2). Defendants filed a Notice of Removal on February 3, 2014, contending that this Court has federal question jurisdiction over this action. (Doc. # 1). This Court granted Defendants' Motion to Dismiss on April 8, 2014 (Doc. # 24), and Plaintiff filed an Amended Complaint on April 25, 2014 (Doc. # 28).

According to the Amended Complaint, in January of 2011, St. Petersburg police officers and other law enforcement officers came to Plaintiff's residence in St. Petersburg, Florida looking for Plaintiff's husband in order to execute a felony arrest warrant against him. (Id. at ¶¶ 15, 17). When Plaintiff answered the door, she informed police that her husband was home and that he was armed or may have been armed. (Id. at ¶ 18). Plaintiff further indicated that she was in fear of her husband and what he may do to her and others. (Id.). Law enforcement directed Plaintiff to leave her residence immediately, and Plaintiff complied. (Id. at ¶ 19).

Law enforcement began to search the residence for Plaintiff's husband, which led to a shoot-out between law

---

[1]    The Court notes that on May 20, 2014, pursuant to the parties' Stipulation of Dismissal Without Prejudice (Doc. # 33), this action was dismissed against Defendant Balboa Insurance Group without prejudice (Doc. # 35).

enforcement and Plaintiff's husband. (Id. at ¶ 20). The shoot-out culminated in the "tragic death of two law enforcement officers as well as the death" of Plaintiff's husband. (Id.).

After the shoot-out and recovery of the law enforcement officers from Plaintiff's residence, "[t]he St. Petersburg Police Department, through Chief Harmon and/or Mayor Bill Foster made an abrupt decision to [demolish] Plaintiff's home and remove the entire contents prior to allowing [Plaintiff] back to the residence." (Id. at ¶¶ 23-25). According to the Amended Complaint, "the house [was] completely leveled to the ground and all of its contents were destroyed and/or removed and demolished." (Id. at ¶ 26).

Plaintiff contends that subsequent to the destruction of her home, Mayor Foster promised, among other things, that "[t]he City will make sure [Plaintiff] is made whole." (Id. at ¶ 29). Plaintiff submits that she wrote to Mayor Foster directly requesting he honor this promise. (Id. at ¶ 30). Furthermore, the Amended Complaint provides that "Plaintiff has complied with all administrative and statutory conditions precedent to filing her complaint." (Id. at ¶ 14).

In the Amended Complaint, Plaintiff sets forth the following claims against Defendants:

3

Count I: 42 U.S.C. § 1983, Fifth and Fourteenth Amendment claim (City of St. Petersburg, Mayor Foster, Chief Harmon);

Count II: 42 U.S.C. § 1983 and Fourteenth Amendment claim (City of St. Petersburg, Mayor Foster, Chief Harmon);

Count III: Breach of Oral Agreement (City of St. Petersburg, Mayor Foster);

Count IV: Promissory Estoppel claim (City of St. Petersburg, Mayor Foster);

Count V: Inverse Condemnation claim (City of St. Petersburg, Mayor Foster, Chief Harmon); and

Count VI: Negligence (City of St. Petersburg).

(See Doc. # 28).

Defendants filed the present Motion on May 7, 2014, pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. # 30). Plaintiff filed a response in opposition to the Motion on June 2, 2014. (Doc. # 41). The Court has reviewed the Motion and the response thereto and is otherwise fully advised in the premises.

## II.  **Legal Standard**

On a motion to dismiss, this Court accepts as true all of the factual allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004).

4

Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In accordance with Twombly, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). A plausible claim for relief must include "factual content [that] allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. **Analysis**

#### A. **Count I**

Count I is a constitutional "Takings" claim pursuant to 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution. (See Doc. # 28). According to Defendants, Count I is not ripe for this Court's review. (Doc. # 30 at 5).

To establish a constitutional takings violation, a plaintiff must prove that the challenged action denied the plaintiff - the property owner - of any viable economic use of the property. BFI Waste Sys. of N. Am. v. Dekalb Cnty., Ga., 303 F. Supp. 2d 1335, 1347 (N.D. Ga. 2004). "In other words, the governmental action must have made the property worthless." Agripost, Inc. v. Miami-Dade Cnty. ex rel. Manager, 195 F.3d 1225, 1231 (11th Cir. 1999). In addition, "the property owner must allege *either* that the state law provides him no process for obtaining just compensation (such as an action for inverse condemnation) or that the state law appears to provide such process, but due to state court interpretation, the process is inadequate." Id. (emphasis added). If the plaintiff cannot show either of these latter

requirements, the case is not ripe and the court lacks subject matter jurisdiction over the claim. Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194 (1985). Defendants argue that Plaintiff's Takings claim is not ripe as Plaintiff has failed to demonstrate that state law provides her with no process for obtaining the just compensation she desires. (Doc. # 30 at 5).

Plaintiff argues that Defendants have failed to state what "procedures" are available to Plaintiff that she has failed to exhaust. (Doc. # 41 at 4). To the contrary, Plaintiff contends that she did comply with the available state procedures before filing this lawsuit and alleged so in her Amended Complaint – "Plaintiff has complied with all administrative and statutory conditions precedent to filing her complaint" (Doc. # 28 at ¶ 14), which included filing a notice under Fla. Stat. § 768.28 and waiting the six month period for the state to consider her claim. (Doc. # 41 at 4).

Plaintiff indicates that she knows of no other options for her to obtain relief from the alleged constitutional deprivations but for her to bring a § 1983 action. To that end, Plaintiff submits that the remedies under a tort theory are "far from equal to remedies available under [42 U.S.C. §] 1983" as the state caps damages, limits attorneys' fees and

affords other immunities to government employees and agencies. (Id.). However, the Court notes that in addition to her federal Takings claim, Plaintiff has simultaneously brought a claim of inverse condemnation against Defendants, "for the taking of private property rights protected under Article X, Section 6 and Article I, Section 9, of the Florida Constitution as well as Articles V and XIV of the United States Constitution." (See Doc. # 28 at 9-11).

Neither party disputes that Florida law provides a procedure for seeking just compensation under an inverse condemnation claim. The Court acknowledges Plaintiff's arguments regarding the "inadequacy" of the state law remedies for her alleged deprivation. However, Plaintiff has failed to provide any legal authority demonstrating this alleged inadequacy or that she has been previously denied relief on her state law takings claim. Thus, Plaintiff's federal Takings claim is not ripe, and will not be "until [she] has used the [state] procedure and been denied just compensation." Williamson Cnty. Reg'l. Planning Com'n, 473 U.S. at 195; Watson Constr. Co. v. City of Gainesville, 244 F. App'x 274, 277-78 (11th Cir. 2007)("Because Florida law provides an adequate procedure for seeking just compensation under an inverse condemnation claim, [plaintiff's] federal

claim is not ripe 'until it has used the procedure and been denied just compensation.'"); New Port Largo, Inc. v. Monroe Cnty., 873 F.Supp. 633, 640 (S.D. Fla. 1994) aff'd, 95 F.3d 1084 (11th Cir. 1996)(finding that the plaintiff's just compensation claim was not ripe as the plaintiff failed to pursue an inverse condemnation remedy in state court to obtain just compensation for the alleged taking); E.-Bibb Twiggs Neighborhood Ass'n v. Macon Bibb Planning & Zoning Comm'n, 896 F.2d 1264, 1266 (11th Cir. 1989) (finding that when the plaintiffs filed their section 1983 action, they had not exhausted the process leading toward "just compensation" because they failed to seek compensation through state law procedures).

Plaintiff initiated this action in state court and Defendants subsequently removed this action on the basis of federal question jurisdiction. Because Plaintiff has not been able to pursue her claim for deprivation without just compensation, specifically by way of her inverse condemnation claim, this Court lacks jurisdiction over the Takings claim. See generally BFI Waste Sys. of N. Am., 303 F. Supp. 2d at 1347-48 (remanding the plaintiff's takings and inverse condemnation claims as the "plaintiff has not been able to pursue its inverse condemnation claim in state court.");

Bickerstaff Clay Prods. Co., Inc. v. Harris Cnty., Ga. By & Through Bd. of Comm'rs, 89 F.3d 1481, 1491 (11th Cir. 1996)(A Takings Clause claim does not become ripe unless the state provides no remedy to compensate the landowner for the taking (i.e., inverse condemnation claim)). Accordingly, Defendants' Motion is granted as to Count I. However, Count I is dismissed without prejudice so that Plaintiff may raise her constitutional Takings claim once she has exhausted all available state law remedies.

**B. Count II**

Defendants insist that it still remains unclear as to whether Plaintiff is alleging substantive due process or procedural due process violations in Count II. (Doc. # 30 at 11). However, a review of the language provided in the Amended Complaint demonstrates that Count II is a claim for a violation of Plaintiff's procedural due process rights. (See Doc. # 28 at ¶ 40).

Defendants argue that Plaintiff's Amended Complaint fails to state a claim for procedural due process. (Doc. # 30 at 11). Specifically, Defendants submit that:

> The deprivation by state action of a constitutionally protected interest is not itself unconstitutional. What is unconstitutional is the deprivation of the interest without due process of

law. The constitutional violation is not complete
until the state fails to provide due process. The
Plaintiff was required, and failed, to plead or
allege what state remedies were inadequate. This
failure requires dismissal.

(Id. at 11)(internal citations omitted).

Furthermore, Defendants contend that Mayor Foster and
Chief Harmon are entitled to qualified immunity on Count II,
and Plaintiff fails to fulfill the requirements of Monell v.
Department of Social Services of City of New York, 436 U.S.
658 (1978) to assert a § 1983 claim against the City of St.
Petersburg. (Doc. # 30 at 12). The Court will address each
argument in turn.

### 1. **Failure to State a Claim**

Defendants contend that Plaintiff has failed to state a
cause of action as Plaintiff has failed to plead or allege
the inadequacy of the state remedies available to her. (Id.
at 11).

In the Amended Complaint, Plaintiff suggests that:

The City of St. Petersburg, through its Mayor
and/or Chief of Police, as official policy makers
on behalf of the City and Mayor Foster, in his
individual capacity, acting under color of law,
and/or Chief Harmon, in his individual capacity,
acting under color of law, ordered other employees
or contractors to completely destroy Plaintiff's
home and all of its contents and remove the entire

contents of the home including 100% of the personal
property inside without her permission or consent,
without due process of law.

* * *

Plaintiff was denied access to her home from the
point she was ordered to leave and was not allowed
to return.

As a result of the course of action directed by
Mayor Foster, and/or Chief Harmon, both of whom had
actual and apparent authority to order the tak[ing]
of her property without due process of law,
Plaintiff has suffered damages. . . .

(Doc. # 28 at ¶¶ 41, 43-44).

As this Court previously determined, Count II is a claim
for the alleged violation of Plaintiff's procedural due
process rights. To prevail on a procedural due process claim,
Plaintiff must establish: (1) a constitutionally protected
interest in life, liberty or property; (2) governmental
deprivation of that interest; and (3) the constitutional
inadequacy of procedures accompanying the deprivation. Bank
of Jackson Cnty. v. Cherry, 980 F.2d 1362, 1366 (11th Cir.
1993). The essential elements of procedural due process are
notice and an opportunity to be heard before one is deprived
of a protected interest. Cleveland Bd. of Educ. v. Loudermill,
470 U.S. 532, 542-43 (1985).

12

Unlike substantive due process violations, procedural due process violations do not become complete "unless and until the state refuses to provide due process," (i.e., make available a means to remedy the alleged deprivation). McKinney v. Pate, 20 F.3d 1550, 1562 (11th Cir. 1994)("[T]he presence of a satisfactory state remedy mandates that we find that no procedural due process violation occurred."); Cotton v. Jackson, 216 F.3d 1328, 1331 n.2 (11th Cir. 2000)("[P]rocedural due process violations do not even exist unless no adequate state remedies are available."); Angle v. Dow, 822 F. Supp. 1530, 1545 (S.D. Ala. 1993) ("[w]here an adequate state law remedy is provided to vindicate federal due process rights, there can be no denial of procedural due process, and thus no constitutional violation.").

In Count II, Plaintiff makes numerous general allegations and legal conclusions. However, these allegations are insufficient to satisfy the pleading requirements of Fed. R. Civ. P. 8(a)[2] because they do not allow the Court to

_____

[2] Defendants urge this Court to apply a heightened pleading requirement to Plaintiff's § 1983 claim. (Doc. # 30 at 2). However, as stated in Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010), "Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in Iqbal . . . After Iqbal it is clear that there is no 'heightened pleading standard' as it relates to cases

evaluate the sufficiency of Plaintiff's constitutional claim. Although Plaintiff pleads some specific facts in the background section of her Amended Complaint, followed by allegations of constitutional violations, she fails to explain how the state law remedies available to her, namely a state law claim for inverse condemnation, are insufficient and provide her inadequate process. See Auburn Med. Ctr., Inc., 9 F. Supp. 2d at 1302 (The plaintiff's general allegation that defendant's actions deprived it of procedural due process is insufficient).

To the extent Plaintiff argues that the state law procedures are inadequate as the state places caps on the amount of damages recoverable, limits attorneys' fees, and affords Defendants with additional protections, the Court notes that these arguments are made in Plaintiff's response in opposition to Defendants' Motion. Upon review of a Motion to Dismiss, the Court is bound to limit its analysis to the four corners of the complaint. See Kinsey v. MLH Fin. Servs., Inc., 509 F. App'x 852, 853 (11th Cir. 2013)("In resolving a motion to dismiss under Rule 12(b)(6), the court generally limits itself to a consideration of the pleadings and exhibits

---

governed by Rule 8(a)(2), including civil rights complaints. All that remains is the Rule 9 heightened pleading standard."

attached thereto."). Further, Plaintiff has failed to provide legal authority demonstrating that even if the state procedures provide such limitations and defenses, that the procedures should be deemed inadequate.

Florida courts possess the power to remedy Plaintiff's loss. Plaintiff has not sufficiently demonstrated how such procedures would be inadequate or deficient. Accordingly, Plaintiff has failed to state a claim under Count II.

### 2. Qualified Immunity: Mayor Foster & Chief Harmon

Irrespective of its determination as to whether Plaintiff stated a procedural due process claim, the Court will discuss Defendants' position that Mayor Foster and Chief Harmon are entitled to qualified immunity as to Count II.

"Qualified immunity protects government officials performing discretionary functions as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Sharp v. Fisher, 532 F.3d 1180, 1183 (11th Cir. 2008) (quoting Beshers v. Harrison, 495 F.3d 1260, 1265 (11th Cir. 2007)). "It is well established that a plaintiff seeking to overcome the defendant's privilege of qualified immunity must show (1) that the officer violated her federal constitutional or statutory rights, and (2) that those rights were clearly

established at the time the officer acted." Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1273 (11th Cir. 2008); Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003)(A government official is immune from suit in his or her individual capacity unless their conduct violates clearly established constitutional or federal rights of which a reasonable person would have known); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993) modified, 14 F.3d 583 (11th Cir. 1994)(A plaintiff facing qualified immunity must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts). "Qualified immunity 'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.'" Gentile v. Bauder, 718 So. 2d 781, 784 (Fla. 1998)(citing Malley v. Briggs, 475 U.S. 335, 343 (1986)).

To be entitled to qualified immunity, the government official must first establish that he was acting within his discretionary authority. Dalrymple, 334 F.3d at 995. If the alleged conduct arises from the discharge of a defendant's discretionary functions, then the burden shifts to the plaintiff to prove: (1) that the facts alleged show that the

government official's conduct violates a constitutional or federal right; and (2) that the constitutional or federal right "was clearly established at the time of the violation." Id.

In this case, Plaintiff does not dispute that Defendants were acting within their discretionary authority as the Chief of Police and Mayor of the City of St. Petersburg when the individuals carried out the actions described in the Amended Complaint. Therefore the Court is left to determine whether Plaintiff sufficiently established that Mayor Foster and Chief Harmon's conduct violated a constitutional or federal right and whether that constitutional or federal right was clearly established at the time of the violation. As will be discussed below, the Court determines that Mayor Foster and Chief Harmon are entitled to qualified immunity.

Plaintiff argues that Defendants violated Plaintiff's procedural due process rights when they "acting under color of law, ordered other employees or contractors to completely destroy Plaintiff's home and all of its contents and remove the entire contents of the home including 100% of the personal property inside without her permission or consent, without due process of law." (Doc. # 28 at ¶ 41). This Court has previously found that Plaintiff failed to adequately allege

17

a violation of her procedural due process rights, and thus, has failed to establish that Defendants violated Plaintiff's constitutional or federal right.  However, even assuming that Plaintiff did establish Defendants violated a constitutional or federal right, Plaintiff does not point to any authority that shows Plaintiff's right was "clearly established" at the time of the alleged violation.

Instead, Plaintiff suggests that "[T]his is a case of violation of rights so basic and well established that no reasonable person could honestly argue they were unaware." (Doc. # 41 at 11). Plaintiff further submits that "The principal of law for which the Defendants are attempting to claim qualified immunity is so well settled that the average 5th grader is well aware of it much less the Mayor of a City and the Chief of Police of the City's Police Department." (Id. at 13)(citing to Beckwith v. Webb's Fabulous Pharmacies, Inc., 374 So. 2d 951, 952 (1979)("We begin our analysis by reviewing rules of law so well established as not to require citation."). Therefore, according to Plaintiff, "[w]hen something is so clearly stated and well established there tends not to be cases specifically holding the obvious, namely that the state cannot take a citizen[']s property without due

process of law and just compensation because it violates rights guaranteed by the Constitution." (Doc. # 41 at 13).

A right can be considered "clearly established" if, in light of preexisting law, the unlawfulness of the official's conduct is "apparent." Cooper v. Dilon, 403 F.3d 1208, 1220 (11th Cir. 2005). Thus, an official is entitled to qualified immunity unless the official has fair warning that his conduct is unlawful. Id. The Eleventh Circuit has identified three categories of fair warning:

> First, . . . whether the federal statute or constitutional provision is so clear, and the conduct is so bad, that it precludes qualified immunity even in the total absence of case law. Second, if the conduct is not bad enough that it violates a constitutional provision on its face, [a court] look[s] to case law that can be applied broadly to a number of factual situations. Third, and finally, if no broad case law is applicable, [the court] turns to case law precedent that is tied to the facts.

Kesinger v. Herrington, 381 F.3d 1243, 1250 n.6 (11th Cir. 2004).

As stated by the Eleventh Circuit, "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing

19

violates federal law in the circumstances." <u>Lassiter v. Ala.
A & M Univ.</u>, 28 F.3d 1146, 1150 (11th Cir. 1994). Further,
the Eleventh Circuit has warned that "courts must not permit
plaintiffs to discharge their burden by referring to general
rules and to the violation of 'abstract rights.'" <u>Id.</u>; <u>Hunter
v. City of Warner Robins, Ga.</u>, 842 F. Supp. 1460, 1469 (M.D.
Ga. 1994)("Unless it can be said that the state of the law
was of such clarity that a reasonable official should have
been on notice that his or her challenged conduct was
unlawful, that official is entitled to qualified immunity.");
<u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) (To determine
whether qualified immunity applies the Court looks to whether
the plaintiff's allegations establish a constitutional
violation, and more significantly, whether such right in
question was "clearly established.").

Plaintiff in this case has not carried her burden of
showing that Defendants violated a clearly established
federal right. Plaintiff fails to assert specific facts to
allow this Court to make a threshold determination by
comparing the facts of this case versus facts in cases where
courts have clearly identified constitutional violations.
Plaintiff must provide either United States Supreme Court
decisions, Eleventh Circuit cases, or Florida Supreme Court

cases that *clearly* establish a violation of federal law, and Plaintiff has failed to do so. Instead, Plaintiff has demonstrated that the case law in this area is not clear, but instead requires a detailed factual analysis of each set of circumstances. (See Doc. # 41)(citing Certain Interested Underwriters At Lloyd's London Subscribing to Certificate No. TPCLDP217477 v. City of St. Petersburg, 864 So. 2d 1145 (Fla. 2nd DCA 2003); In re Forfeiture of 1976 Kenworth Tractor Trailer Truck, Altered VIN 243340M, 576 So. 2d 261 (Fla. 1990); Joint Ventures, Inc. v. Dep't of Transp., 563 So. 2d 622 (Fla. 1990); Case v. Eslinger, 555 F.3d 1317 (11th Cir. 2009)).

Accordingly, as Plaintiff has failed to provide legal authority demonstrating that Mayor Foster and Chief Harmon clearly violated Plaintiff's federal or constitutional right, the Court determines that these Defendants are entitled to qualified immunity as to Count II.

### 3. *Monell*: City of St. Petersburg

In Monell, the Court concluded that a municipality or local government entity "cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory." 436 U.S. at 691. However, "a municipality or other local government may be liable under [§ 1983] if the government body itself subjects

a person to a deprivation of rights or causes a person to be subjected to such deprivation." <u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1359 (2011).

A plaintiff seeking to impose liability on a governmental entity under § 1983 must identify a "municipal 'policy or custom' that caused the plaintiff's injury." <u>Bd. Of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown</u>, 520 U.S. 397, 403 (1997); <u>see</u> <u>Ky. v. Graham</u>, 473 U.S. 159, 166 (1985)(stating that "to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation." (internal citation omitted)).

A plaintiff may establish liability pursuant to a municipal policy when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483 (1986). Alternatively, "to prove § 1983 liability against a municipality based on custom, a plaintiff must establish a

22

widespread practice that, 'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" <u>Brown v. City of Ft. Lauderdale</u>, 923 F.2d 1474, 1481 (11th Cir. 1991)(quoting <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 123 (1988)). Furthermore, municipality liability can be imposed based on an isolated decision by a municipal employee only if that employee has "final policy making authority for the challenged act under state law." <u>Praprotnik</u>, 485 U.S. at 123.

Defendants argue that "Plaintiff fails to fulfill the requirements of <u>Monell</u> to assert a [42 U.S.C. § 1983] claim against the municipality." (Doc. # 30 at 12).  This Court agrees.  In her Amended Complaint, Plaintiff fails to provide factual allegations that establish the City of St. Petersburg's liability by identifying a policy or custom adhered to by its employees – Mayor Foster and Chief Harmon – in allegedly depriving Plaintiff without due process of law, or that the employees had the "final policy making authority for the challenged act under state law." Instead, Plaintiff alleges legal conclusions without the necessary factual support:

> Bill Foster, as Mayor, was a policy maker with actual and apparent decision making authority on behalf of the City of St. Petersburg.
>
> * * *
>
> Chuck Harmon was a policy maker with actual and apparent decision making authority on behalf of the City of St. Petersburg for its Police Department.
>
> * * *
>
> The City of St. Petersburg, through its Mayor and/or Chief of Police, as official policy makers on behalf of the City and Mayor Foster, in his individual capacity, acting under color of state law, and/or Chief Harmon, in his individual capacity, acting under color of law, ordered other employees or contractors to completely destroy Plaintiff's home and all of its contents and remove the entire contents of the home including 100% of the personal property inside without her permission or consent, without due process of law.

(Doc. # 28 at ¶¶ 5, 7, 41).

As Plaintiff has failed to allege sufficient factual allegations demonstrating that a policy or custom of the City of St. Petersburg was the "moving force" behind the alleged constitutional violation suffered by Plaintiff or that Mayor Foster or Chief Harmon had the "final policy making authority," this Court grants Defendants' Motion to Dismiss as it relates to Count II against the City of St. Petersburg.

**C. State Law Claims**

Having granted Defendants' Motion as to Counts I and II, the Court finds that no basis for federal jurisdiction presently remains. Therefore, taking into consideration concerns of comity, judicial economy, convenience and fairness, this Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state law claims. See, e.g., Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988) (recognizing that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims"). Thus, the Court remands the remaining state law claims to state court.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendants City of St. Petersburg, Former Mayor William Foster, and Former Police Chief Chuck Harmon's Dispositive Motion to Dismiss (Doc. # 30) is **GRANTED** to the extent provided herein.

(2)   Count I is dismissed without prejudice as it is not ripe for this Court's review and Count II is dismissed with prejudice.

(3)  The Clerk is directed to remand the remaining state law

claims to state court. After remand has been effected,

the Clerk is directed to **CLOSE THIS CASE**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>4th</u>

day of September, 2014.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record