UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTINE LACY,

    Plaintiff,

v.                                 Case No. 8:14-cv-252-T-33TGW

CITY OF ST. PETERSBURG,
Florida, a municipal corporation;
WILLIAM FOSTER, Former Mayor;
and CHIEF OF POLICE CHUCK HARMON,

    Defendants.
_____/

**ORDER**

This cause comes before the Court pursuant to Plaintiff Christine Lacy's Motion to Reconsider or Provide Relief from Order and Motion for Leave to File Second Amended Complaint (Doc. # 50), filed on September 12, 2014. Pursuant to Local Rule 3.01(b) and Rule 6(d), Fed. R. Civ. P., the deadline for Defendants City of St. Petersburg, Florida; Former Mayor William Foster; and Former Chief of Police Chuck Harmon to file a response in opposition to the Motion was, at the latest, September 29, 2014.

A review of the file reveals that Defendants, who are represented by counsel, failed to file a response to Plaintiff's Motion in the time provided by the Rules or at

any point since. Accordingly, the Court considers the Motion as unopposed. Nonetheless, upon due consideration and for the reasons that follow, Plaintiff's Motion is denied.

I. **Background**

Plaintiff initiated this action on January 27, 2014, in state court.[1] (Doc. # 2). Defendants filed a Notice of Removal on February 3, 2014, contending that this Court has federal question jurisdiction over this action. (Doc. # 1). This Court granted Defendants' Motion to Dismiss on April 8, 2014 (Doc. # 24), and Plaintiff filed an Amended Complaint on April 25, 2014 (Doc. # 28).

According to the Amended Complaint, in January of 2011, St. Petersburg police officers and other law enforcement officers came to Plaintiff's residence in St. Petersburg, Florida looking for Plaintiff's husband in order to execute a felony arrest warrant against him. (Id. at ¶¶ 15, 17). When Plaintiff answered the door, she informed police that her husband was home and that he was armed or may have been armed. (Id. at ¶ 18). Plaintiff further indicated that she was in fear of her husband and what he may do to her and others.

---

[1] On May 20, 2014, pursuant to the parties' Stipulation of Dismissal Without Prejudice (Doc. # 33), this action was dismissed against Defendant Balboa Insurance Group without prejudice (Doc. # 35).

2

(Id.). Law enforcement directed Plaintiff to leave her residence immediately, and Plaintiff complied. (Id. at ¶ 19).

Law enforcement began to search the residence for Plaintiff's husband, which led to a shoot-out between law enforcement and Plaintiff's husband. (Id. at ¶ 20). The shoot-out culminated in the "tragic death of two law enforcement officers as well as the death" of Plaintiff's husband. (Id.).

After the shoot-out and recovery of the law enforcement officers from Plaintiff's residence, "[t]he St. Petersburg Police Department, through Chief Harmon and/or Mayor Bill Foster made an abrupt decision to [demolish] Plaintiff's home and remove the entire contents prior to allowing [Plaintiff] back to the residence." (Id. at ¶¶ 23-25). According to the Amended Complaint, "the house [was] completely leveled to the ground and all of its contents were destroyed and/or removed and demolished." (Id. at ¶ 26).

Plaintiff contends that subsequent to the destruction of her home, Mayor Foster promised, among other things, that "[t]he City will make sure [Plaintiff] is made whole." (Id. at ¶ 29). Plaintiff submits that she wrote to Mayor Foster directly requesting he honor this promise. (Id. at ¶ 30). Furthermore, the Amended Complaint provides that "Plaintiff

3

has complied with all administrative and statutory conditions precedent to filing her complaint." (Id. at ¶ 14).

In the Amended Complaint, Plaintiff set forth the following claims against Defendants:

> Count I: 42 U.S.C. § 1983, Fifth and Fourteenth Amendment claim (City of St. Petersburg, Mayor Foster, Chief Harmon);
>
> Count II: 42 U.S.C. § 1983 and Fourteenth Amendment claim (City of St. Petersburg, Mayor Foster, Chief Harmon);
>
> Count III: Breach of Oral Agreement (City of St. Petersburg, Mayor Foster);
>
> Count IV: Promissory Estoppel claim (City of St. Petersburg, Mayor Foster);
>
> Count V: Inverse Condemnation claim (City of St. Petersburg, Mayor Foster, Chief Harmon); and
>
> Count VI: Negligence (City of St. Petersburg).

(See Doc. # 28).

Defendants filed a Motion to Dismiss the Amended Complaint on May 7, 2014. (Doc. # 30). Plaintiff filed a response in opposition to the Motion on June 2, 2014. (Doc. # 41). Upon review of the Motion and the response thereto, the Court granted Defendants' Motion to the extent that Count I was dismissed without prejudice as it was not ripe for the Court's review; Count II was dismissed with prejudice; and as

no basis for federal jurisdiction remained, the remaining state law claims were remanded to state court. (See Doc. # 48). Plaintiff filed the present Motion on September 12, 2014. (Doc. # 50).

**II.  Legal Standard**

It is within the Court's discretion to grant a motion for reconsideration. Lussier v. Dugger, 904 F.2d 661, 667 (11th Cir. 1990). Arguments in favor of granting reconsideration must be balanced against the desire to achieve finality in litigation. Id. As stated in Florida College of Osteopathic Medicine, Inc. v. Dean Witter Reynolds, Inc., 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998), "[a] motion for reconsideration must demonstrate why the court should reconsider its past decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Further, "in the interests of finality and conservation of scarce judicial resources, reconsideration is an extraordinary remedy to be employed sparingly." Lamar Adver. of Mobile, Inc. v. City of Lakeland, 189 F.R.D. 480, 489 (M.D. Fla. 1999).

This Court recognizes three grounds to justify reconsideration of a prior order: "(1) an intervening change in controlling law; (2) the availability of new evidence, and

5

(3) the need to correct clear error or manifest injustice." <u>Fla. Coll. of Osteopathic Med., Inc.</u>, 12 F. Supp. 2d at 1308. In deciding a motion for reconsideration, "[t]his Court will not reconsider its judgment when the motion for reconsideration fails to raise new issues but, instead, relitigates that which the Court previously found lacking." <u>Ludwig v. Liberty Mut. Fire Ins. Co.</u>, No. 8:03-cv-2378-T-17MAP, 2005 U.S. Dist. LEXIS 37718, at *8 (M.D. Fla. Mar. 30, 2005). In addition, "a motion for reconsideration is not the proper forum for the party to vent dissatisfaction with the Court's reasoning." <u>Id.</u> at *11 (internal citation and quotation omitted).

### III. <u>Analysis</u>

Plaintiff seeks reconsideration of the Court's previous Order to the extent that this Court should allow Plaintiff to make "minor amendments" to the Amended Complaint to comply with the issues raised by the Court. (Doc. # 50 at 1). The amendments are limited to "(1) changing the word 'Official' to 'Final' with respect to the allegations of [Chief Harmon and Mayor Foster] being policymakers and (2) alleging that Plaintiff has exhausted state remedies or inadequate remedies exist at the state level to afford [Plaintiff] due process

6

for the taking of her real and personal property." (Id. at 2).

**A. Changing the Word "Official" to "Final"**

Count II is a claim for the alleged violation of Plaintiff's procedural due process rights pursuant to 42 U.S.C. § 1983. In the present Motion, Plaintiff takes issue with the Court's previous Order as it relates to Count II against the City of St. Petersburg.

In Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978), the Court concluded that a municipality or local government entity "cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory." 436 U.S. at 691. However, "a municipality or other local government may be liable under [§ 1983] if the government body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011).

A plaintiff seeking to impose liability on a governmental entity under § 1983 must identify a "municipal 'policy or custom' that caused the plaintiff's injury." Bd. Of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403 (1997); see Ky. v. Graham, 473 U.S. 159, 166

(1985)(stating that "to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation." (internal citation omitted)).

A plaintiff may establish liability pursuant to a municipal policy when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986). Alternatively, "to prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, 'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" Brown v. City of Ft. Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991)(quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988)). Furthermore, municipality liability can be imposed based on an isolated decision by a municipal employee only if that employee has "final policy making

8

authority for the challenged act under state law." Praprotnik, 485 U.S. at 123.

As provided by Plaintiff, her "'Monell' claim against the City was not based on a policy, custom or practice but was based upon the Mayor and/or the Chief as final policy makers, ordering the constitutional violation." (Doc. # 50 at 3). The Court recognizes the limitation of Plaintiff's argument, however, in the interest of completeness, the Court – in its prior Order – considered all possible claims under Monell. In its previous Order, the Court stated:

> In her Amended Complaint, Plaintiff fails to provide factual allegations that establish the City of St. Petersburg's liability by identifying a policy or custom adhered to by its employees – Mayor Foster and Chief Harmon - in allegedly depriving Plaintiff without due process of law, or that the employees had the "final policy making authority for the challenged act under state law." Instead, Plaintiff alleges legal conclusions without the necessary factual support:
>
> Bill Foster, as Mayor, was a policy maker with actual and apparent decision making authority on behalf of the City of St. Petersburg.
>
> * * *
>
> Chuck Harmon was a policy maker with actual and apparent decision making authority on behalf of the City of St. Petersburg for its Police Department.

9

> \* \* \*
>
> The City of St. Petersburg, through its Mayor and/or Chief of Police, as *official* policy makers on behalf of the City and Mayor Foster, in his individual capacity, acting under color of state law, and/or Chief Harmon, in his individual capacity, acting under color of law, ordered other employees or contractors to completely destroy Plaintiff's home and all of its contents and remove the entire contents of the home including 100% of the personal property inside without her permission or consent, without due process of law.

(Doc. # 48 at 21-24)(emphasis added).

Now, Plaintiff requests that this Court reconsider its previous Order and allow her to alter the Amended Complaint to change her use of the word "official" to "final," as Plaintiff suggests that "The only difference between Plaintiff[']s allegations and the language the Court alleges is necessary is that Plaintiff used the word 'official' instead of 'final' when referring to [Chief Harmon and Mayor Foster] as 'policy makers.'" (Doc. # 50 at 6). However, Plaintiff's interpretation of the Court's previous Order is incorrect.

The Court's previous determination was not solely based on Plaintiff's use of the term "official" as opposed to "final." Instead, as explicitly provided by the Court,

Plaintiff's Amended Complaint alleged legal conclusions without the necessary factual support. (See Doc. # 48). Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible short and plain statement of the plaintiff's claim, not an exposition of his legal argument. However, although Fed. R. Civ. P. 8 constitutes a liberal pleading standard, legal conclusions must be supported by factual allegations. See Iqbal, 556 U.S. at 664. Plaintiff failed to meet this burden in her Amended Complaint.

To the extent Plaintiff seeks to replace the word "official" with "final" in order to cure what Plaintiff perceives as the Court's concern, Plaintiff has failed to provide legal authority demonstrating that those two terms are interchangeable and carry the same meaning in a Monell analysis. In the present Motion, Plaintiff suggests, "Plaintiff alleged [Mayor Foster or Chief Harmon] had 'policy making authority.' *A person with authority to make policy for the City is a 'Final Policy Making Authority.'*" (Doc. # 50 at 6)(emphasis added). Plaintiff, however, fails to provide case law to support her allegation; nowhere does Plaintiff provide authority demonstrating that a person with authority to make policy for the City of St. Petersburg is in fact a final policy making authority.

The Court recognizes that "Plaintiff's allegations and intention [in the Amended Complaint] was to allege that both the Chief and Mayor were final policy makers and the City can be held liable under a 'Monell' theory for the direct orders to destroy Plaintiff's house and all of its contents." (Id.). However, when this Court made its determination, Plaintiff failed to adequately allege her intention. Now, Plaintiff seeks to relitigate what this Court previously found lacking – factual allegations to support Plaintiff's contention that Defendants Mayor Foster or Chief Harmon had final policy making authority. Changing the word "official" to "final" will not cure the deficiency identified by the Court in its previous Order. Therefore, the Court declines Plaintiff's Motion as it relates to Count II.

### B. Alleging that Plaintiff Exhausted State Remedies or Inadequate State Remedies Exist

Plaintiff further requests that this Court reconsider its previous Order and allow Plaintiff to amend its Amended Complaint to allege that she has exhausted state remedies or plead that inadequate remedies exist at the state level to afford Plaintiff due process for the taking of Plaintiff's real and personal property. (Doc. # 50 at 2).

According to Plaintiff, her "takings" claim – Count I – is for personal property in addition to the physical building – her residence. (Id.). To that end, Plaintiff argues that inverse condemnation is not a cause of action for taking of personal property, and as a result, no state remedy exists. (Id.).

In regards to her Inverse Condemnation Claim, Plaintiff's Amended Complaint states in relevant part: "This is an action for inverse condemnation for the taking of private property rights protected under Article X, Section 6 and Article I, Section 9 of the Florida Constitution as well as Articles V and XIV of the United States Constitution." (Doc. # 28 at ¶ 57). However, instead of indicating what property rights were at issue (i.e., personal property or real property), Plaintiff generally stated "private property rights." (See Id.). Nonetheless, at no time in its Order did the Court take a position on whether the state law claim of inverse condemnation covered personal property or whether it would adequately remedy Plaintiff for her alleged loss. Instead, the Court dismissed Count I without prejudice as it was not ripe, in its entirety, for this Court's review.

To the extent Plaintiff alleges a takings violation for real property, it is undisputed that she has a state remedy

13

available to her – inverse condemnation. Therefore, although an action for inverse condemnation may not provide a remedy for the personal property deprivation she alleges, the Court declines – as it did in its previous Order - to expend scarce judicial resources at this time to allow Plaintiff to litigate a portion of her takings claim (personal property) in federal court when the other portion (real property) is not ripe for this Court's review. Once Plaintiff prosecutes her inverse condemnation claim, Plaintiff can raise her takings claim with this Court. At no time has this Court foreclosed Plaintiff's ability to do so.

Furthermore, Plaintiff states, "The Court is correct that Plaintiff did not specifically allege in the Amended Complaint that state law provides no process or inadequate process for obtaining just compensation. However that was clearly the intent." (Doc. # 50 at 4-5). At the time this Court made its previous ruling, Plaintiff admittedly failed to demonstrate that state law provided an inadequate process or remedy. The Court declined then, as it does now, to engage in presumptions as to what any party, including Plaintiff, intended to argue in its pleadings.

To illustrate the inadequacy of the state remedy, Plaintiff points the Court's attention to a footnote in

<u>Agripost, Inc. v. Miami-Dade County., ex rel. Manager</u>, 195 F.3d 1225, 1231 (11th Cir. 1999), where the Eleventh Circuit stated:

> An example of how a state law — adequate on its face — *could* provide an inadequate remedy because of a state court's (the trial court's and/or the appellate court's) interpretation would be if the state law provided an inverse condemnation action to remedy a taking, but the state court interpreted the law as capping the property owner's damages at less than the value of what was taken. In such a case, the state court's interpretation of the law would render the remedy inadequate to provide "just compensation" within the meaning of the Fifth Amendment.

<u>Id.</u> at 1231, n.13 (emphasis added). This Court is familiar with this footnote, and considered this authority in making its previous determination, but found the Eleventh Circuit's use of the word "could" to be instructive. While this Court again acknowledges Plaintiff's argument that the state law remedy is inadequate as the state places caps on the amount of damages recoverable, limits attorneys' fees, and affords Defendants with additional protections (Doc. # 50 at 8-9), the Court declines to take the position that the state law remedy is in fact inadequate. Plaintiff has not pursued her inverse condemnation claim and finding that the state remedy is inadequate at this time is premature.

Furthermore, the Court notes that any arguments Plaintiff previously made alleging the inadequacy of the state remedy were made in Plaintiff's response in opposition to Defendants' Motion to Dismiss. Upon review of a Motion to Dismiss, the Court is bound to limit its analysis to the four corners of the complaint. See Kinsey v. MLH Fin. Servs., Inc., 509 F. App'x 852, 853 (11th Cir. 2013)("In resolving a motion to dismiss under Rule 12(b)(6), the court generally limits itself to a consideration of the pleadings and exhibits attached thereto."). Therefore, in making its determination, as to the adequacy of Plaintiff's claims, the Court could not consider Plaintiff's arguments.

Upon granting Defendants' initial Motion to Dismiss, this Court allowed Plaintiff the opportunity to file an Amended Complaint to cure any deficiencies in her allegations. Plaintiff's Amended Complaint likewise contained several deficiencies; particularly, Plaintiff continued to allege legal conclusions without the requisite factual support. This Court stands by its previous Order and declines to allow Plaintiff to re-litigate, by way of filing a Second Amended Complaint, what this Court previously found lacking.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff Christine Lacy's Motion to Reconsider or Provide Relief from Order and Motion for Leave to File Second Amended Complaint (Doc. # 50) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 2nd day of October, 2014.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All counsel of record